***********
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing before the deputy commissioner as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act. All parties are properly before the Commission.
2. The plaintiff was an employee of Claude Hollifield doing business as Hollifield Sales on April 11, 2000.
3. Plaintiff alleges that he sustained an injury by accident on March 15, 2000 and April 11, 2000.
4. On April 11, 2000, claim service was provided to the employer by Constitution State Service Company.
5. The plaintiff's average weekly wage is $400, yielding a compensation rate of $266.66.
 ***********
Based upon the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the date of hearing, plaintiff was 47 years of age. He attended 3 years of college, and also completed welding training at a community college. Plaintiff is nationally certified in welding.
2. Plaintiff began working for the employer in 1993. Claude Hollifield's business builds and delivers various outdoor structures, including camper trailers, gazebos, doghouses, and sheds. Plaintiff worked both building and delivering these structures.
3. Prior to the dates of plaintiff's injuries in 2000, plaintiff had undergone a cervical discectomy and fusion at C5-7 in June 1999, which was performed by Dr. Loomis, a neurosurgeon. As of October 4, 1999, Dr. Loomis had released plaintiff to return to full duty work. Plaintiff had indicated to Dr. Loomis that he was recovered and having no pain.
4. On or about February 28, 2000, plaintiff helped deliver and set up a metal building, about 12 feet by 16 feet to a location in Morganton. This building was delivered to a young couple, who lived next to a church. Claude Hollifield had forgotten to bring the jack. As plaintiff was attempting to help push the building into place, he heard a popping sound and felt pain in his neck. Although plaintiff was unsure about the date of his injury, he consistently stated that it happened during the delivery of a building to Morganton. The evidence indicates this was actually late February, around February 28, 2000.
5. Later that day, when he was back at the home office, plaintiff told co-employee, John Hawkins that he thought he had reinjured his neck, making deliveries that day. Mr. Hawkins testified that plaintiff did not make a "big deal" about it. Consistent with Mr. Hawkins testimony, plaintiff did not seek medical attention at that time, thinking it was only a strain. However, after that, plaintiff did complain a couple of times to Hawkins that his neck was sore, and plaintiff did not usually complain. Plaintiff attempted to obtain pain medication on March 29, 2000, but the doctor would not prescribe medicine without an office visit. Plaintiff took non-prescription Advil for his pain. The incident on February 28, 2000 either caused or aggravated plaintiff's pseudoarthrosis. Thereafter, plaintiff experienced neck pain, but he continued to work.
6. Around April 11, 2000, plaintiff was assisting with the delivery of a 12 by 24 foot wooden building to a site in Spruce Pine, along with Claude Hollifield. There was limited space for the truck, and they had to drop the building off at an awkward angle. Plaintiff was attempting to push the building into place, when he felt another loud pop with pain in his neck. He told Claude Hollifield about his neck pain, which was so severe that plaintiff stopped working.
7. On April 13, 2000, plaintiff went to his family practice, McDowell Family Medicine, where he was seen by a physician's assistant. He reported that he had been doing fine until he heard a pop in his neck while pushing on a building as part of his work. This report was consistent with the evidence, except that it appears this happened earlier than plaintiff advised the doctor's office. Plaintiff was referred for an MRI and to go back to see the neurosurgeon, if needed.
8. On April 27, 2000, plaintiff returned to see Dr. Loomis. He reported that he was asymptomatic until the last few weeks, when he was heaving and shoving on the side of a building. Dr. Loomis' physical exam was normal and he had a chance to review the MRI the next day. The MRI did not reveal any problems, and Dr. Loomis ordered a cervical myelogram, which showed no abnormality of the nerve roots.
9. Dr. Loomis took plaintiff out of work and sent him to physical therapy. On June 21, 2000, he sent plaintiff for x-rays, which showed a definite lucency at C6-7. Dr. Loomis diagnosed plaintiff with pseudoarthrosis, i.e. the bone graft had not healed properly. Dr. Loomis recommended that plaintiff undergo a posterior wiring and fusion, which proves to be successful for 95 percent of patients. Dr. Loomis performed this procedure on plaintiff on July 20, 2000.
10. Initially following the surgery, plaintiff seemed to improve. At his August 29, 2000 visit, plaintiff told Dr. Loomis he was getting better and weaning himself off the pain medication. However, in September, plaintiff called Dr. Loomis with complaints of uncomfortable sensations in his head and electric shock sensations. At his office visit on October 23, plaintiff complained to Dr. Loomis of pain in his neck, which began with physical therapy. Dr. Loomis ordered cervical x-rays.
11. On November 1, 2000, Dr. Loomis reviewed the x-rays, which he found showed a healing, but not yet solid fusion. He did not yet release plaintiff for a return to work, and anticipated he would remain out of work for another three months.
12. On January 16, 2001, plaintiff was seen by a family nurse practitioner at Dr. Loomis' office, and new x-rays and myelogram/CT scan were ordered. Dr. Loomis then reviewed these test results, which he believed showed a solid fusion at C5-6-7. Dr. Loomis discussed this with plaintiff over the telephone. He then referred plaintiff to Dr. Chip Thompson for a possible nerve root block.
13. Due to plaintiff's ongoing complaints, Dr. Loomis also referred plaintiff to Dr. Margaret Burke, a physical medicine specialist, and Dr. Terry McGhee, a neurologist. Dr. McGhee saw plaintiff in February 2001. During this time, plaintiff also had a cervical nerve block, performed by Dr. Chip Thompson.
14. On July 17, 2001, plaintiff saw Dr. Loomis with complaints of severe excruciating pain in the back of his neck. Dr. Loomis reviewed recent x-rays, which the radiologist interpreted to show a pseudoarthrosis at C6-7. However, Dr. Loomis and his partners reviewed the studies and concluded that there was a solid fusion at C6-7.
15. Around August 28, 2001, plaintiff underwent additional surgery. Dr. William Bell performed surgical removal of the anterior cervical plate.
16. Dr. Loomis is of the opinion that the activity which plaintiff described, pushing and shoving on the building(s) as they were being placed at delivery, most likely aggravated the plaintiff's pseudoarthrosis. Dr. Loomis was also of the opinion that a person with pseudoarthrosis would likely be in too much pain to do hard labor. He could not determine at what point in time plaintiff's pseudoarthrosis occurred.
17. Based on the greater weight of the evidence, plaintiff recovered from his 1999 surgery by October 4, 1999 and was able to return to unrestricted, heavy manual labor. Thereafter, plaintiff did not complain of pain in his neck until after his injury on or about February 28, 2000. Plaintiff helped his wife move mulch and his brother move steel after his February 28, 2000 injury. Based on the greater weight of the evidence, these two activities did not cause or materially aggravate plaintiff's pseudoarthrosis.
18. Based on the greater weight of the evidence, the incident plaintiff described on April 11, 2000 when he experienced a loud pop and immediate pain in his neck while helping push a utility building in place materially aggravated his pseudoarthrosis and caused his condition to become totally disabling. Dr. Loomis assigned a thirty percent permanent impairment rating to plaintiff's neck, although this rating was related to the prior 1999 surgery, and not to the new surgery in 2000. Dr. Loomis has recommended that plaintiff not return to his prior employment.
19. As of the hearing date, plaintiff had not returned to gainful employment. Given the impairment to his neck, and as Dr. Loomis testified, plaintiff cannot return to the type of work he was doing for Hollifield Sales. The evidence fails to establish that plaintiff is capable of returning to light duty work for Hollifield Sales. There was no evidence that the employer or other employers had suitable work available.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On or about February 28, 2000, plaintiff sustained a specific traumatic incident arising out of and in the course of his employment, when he was pushing on a building being delivered by the employer, and felt pain and a pop in his neck. N.C. Gen. Stat. § 97-2(6).
2. On or about April 12, 2000, plaintiff sustained an additional specific traumatic incident arising out of and in the course of his employment, when he was again pushing on a building that was being delivered by the employer and he felt pain and a pop in his neck. N.C. Gen. Stat. § 97-2(6).
3. As a consequence of one or both of the above incidents, plaintiff sustained aggravation of his pre-existing cervical condition, specifically his pseudoarthrosis. As a consequence, he needed additional medical treatment, including additional surgeries, performed by Dr. Loomis and later Dr. Bell, and physical therapy and pain management. Defendants are responsible for payment for all such reasonably necessary medical treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. As a consequence of the specific traumatic incidents on or about February 28, 2000 and April 11, 2000, plaintiff has been unable to earn wages in any employment and has been totally disabled since April 11, 2000. Defendants are responsible for payment of benefits at the rate of $266.66 per week beginning April 11, 2000 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay all expenses incurred by plaintiff for reasonably necessary medical treatment of his neck injury after April 11, 2000, including the surgeries and medical treatment provided by Dr. Loomis, Dr. Bell, Dr. McGhee, and Dr. Thompson.
2. Defendants shall pay plaintiff compensation at the rate of $266.66 per week, beginning April 11, 2000 and continuing until further order of the Commission. All accrued amounts shall be paid in a lump sum.
3. A reasonable attorneys fee of twenty-five percent of the compensation awarded to plaintiff herein is approved for his counsel. Twenty-five percent of the lump sum due shall be paid to his counsel. Thereafter, every fourth check shall be paid to plaintiff's counsel.
4. Defendants shall pay the costs due this Commission
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN
BSB:md